**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MAGLA PRODUCTS, L.L.C.,

    Plaintiff,

v.

RICHARD F. CHAMBERS and
BIG TIME PRODUCTS, L.L.C.,

    Defendants.

Civil Action No. 06-0115 (PGS)

**OPINION**

**SHERIDAN, U.S.D.J.**

This matter comes before this Court on plaintiff Magla Products, L.L.C.'s ("Magla") motion for reconsideration of the portion of this Court's decision granting Big Time Products, L.L.C.'s ("Big Time") motion to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2). In support of the motion, pursuant to L. Civ. R. 7.1(i), plaintiff points to nine (9) "important contacts" which plaintiff notes were not cited in the Court's September 29, 2006 Opinion. Plaintiff maintains that these contacts, when combined with the contacts cited in the Opinion, provide sufficient evidence to confer personal jurisdiction upon Big Time. The Court disagrees and the motion is denied.

Specifically, Magla contends that the Court failed to consider the following material facts:

1. Chambers admits that "[p]artnering with Harry Pierce in 2003, he formed Big Time Products." As a result, Chambers is not simply Big Time's President, he is a founder and co-owner and his knowledge should be imputed to Big Time for personal jurisdiction purposes;

2. As indicated in an October 24, 2002 email from Big Time Co-Owner Harry Pierce to plaintiff Magla Products, L.L.C., Big Time was formerly known as Blue Horizon;

3. Pursuant to its contract with Magla, Blue Horizon shipped product to Magla, a New Jersey corporation;

4. After October 14, 2002, Big Time continued to work with Magla in compliance with Blue Horizon's agreement with Magla, which inleuded shipping product to Magla, a New Jersey corporation;

5. Big Time and Magla conducted business in New Jersey totaling several million[] dollars worth of sales;

6. Mr. Pierce on behalf of Big Time attended various business meetings with Jordan Glatt (President and CEO of Magla) in New Jersey. One of these meetings occurred on October 17, 2003, during the very time period that Magla alleges Chambers and Big Time unlawfully competed against it;

7. Mr. Pierce on behalf of Big Time negotiated many business deals with Mr. Glatt;

8. Mr. Pierce on behalf of Big Time spoke to and emailed Mr. Glatt, and other Magla employees in New Jersey on various business issues; and

9. Big Time sells, markets and distributes products under the Quickie brand pursuant to an agreement with Quickie Manufacturing Corporation, which is located in Cinnaminson, New Jersey.

I.

In New Jersey, a motion for reconsideration or reargument is governed by L.Civ.R. 7.1(i). Whether to grant a motion for reconsideration is wholly within the district court's discretion. *Croker v. Boeing Co.*, 662 F.2d 975 (3d Cir. 1981); *Artista Records, Inc. v. Flea World, Inc.*, 356 F.Supp.2d 411, 415 (D.N.J. 2005); *Williams v. Sullivan*, 818 F.Supp. 92, 93 (D.N.J. 1993). The standard a party must meet to succeed on a motion for reconsideration is quite high. A party is entitled to seek reconsideration to correct manifest errors of law or fact, to present newly discovered evidence,

*Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985), or where facts or legal authority were presented but overlooked. *Artista Records*, 356 F.Supp.2d at 415; *Williams*, 818 F.Supp. at 93. Motions for reconsideration are granted sparingly, *Bowers v. NCAA*, 130 F.Supp.2d 610 (D.N.J. 2001), and only when dispositive factual matters or controlling decisions of law were brought to the court's attention but not considered. *McGarry v. Resolution Trust Corp.*, 909 F.Supp. 241, 244 (D.N.J. 1995). A motion for reconsideration may be granted if: (1) an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice. *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). On a motion for reconsideration, it is improper for a party to "ask the court to rethink what it had already thought through-rightly or wrongly," *In re Tutu Wells Contamination Litig.*, 162 F.R.D. 81, 88 (D.V.I.1995), and "in the absence of newly discovered, non-cumulative evidence, the parties should not be permitted to reargue previous rulings made in the case." *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Maryland*, 744 F.Supp. 1311, 1314 (D.N.J.1990).

II.

With regard to plaintiff's contention that Chamber's knowledge should be imputed to Big Time, the Court clearly stated, "[s]uch knowledge is not imputed to Big Time simply because Chambers now works for them." *See Ripa v. Owens-Corning Fiberglass Corp.*, 282 N.J. Super. 373, 405 (N.J. Super. Ct. App. Div. 1995). Regarded as a general rule of corporate law, "when knowledge is acquired by the officers or agents of one corporation while acting on behalf of another corporation, this knowledge will not be imputed to the former corporation." 3 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 814.10 (perm.ed.,

3

rev.vol.2002); *In re Mercedes-Benz*, 2006 WL 2129100 (D.N.J. 2006); *Ripa*, 282 N.J.Super. 373, 405 (App.Div.1995). The exception to the rule is where both corporations involved are close corporations, or where there are equitable reasons for disregarding the separate corporate entities. While Magla argues the close nature of Big Time, there is no argument that Magla is a close corporation so as to invoke the exception. Magla also takes issue with the Court's reliance on *Ripa*, considering the factual differences between the circumstances at issue and those set forth in *Ripa*. However, in its brief in support of the motion for reconsideration, Magla only cites to *Hercules Powder Co. v. Nieratko*, 113 N.J.L. 195, a 1934 case, concerning a workmen's compensation matter, which stated that "[k]nowledge of the proper corporate agent must be regarded as, in legal effect, the knowledge of the corporation." The Court finds Magla's arguments unconvincing and does not see reason to stray from the general rule even if a plaintiff were among the founders of the second entity.

Several of the facts which plaintiff claims were overlooked concern Blue Horizon, which plaintiff alleges was the predecessor to Big Time. However, these arguments seem to contradict the previous claim that Chambers founded and formed Big Time in 2003. If the Court were to accept Magla's argument that Blue Horizon and Big Time are one in the same, the company appears to preexist Chamber's "[p]artnering with Harry Pierce in 2003." Nevertheless, the Court is convinced by the documentation submitted by Big Time from Secretary of State of the State of Georgia, submitted in connection with Big Time's reply to the opposition to the motion to dismiss, that Blue Horizon and Big Time are separate entities and not the result of a name change. Thus, any contacts that Blue Horizon had within the State of New Jersey are not attributable to Big Time so as to confer personal jurisdiction.

With regard to contacts between Pierce and Glatt, the Court addressed this issue in the

4

September 29, 2006 Opinion at footnote two, where the Court stated:

> Magla argues as well that, because the CEO of Big Time regularly attended meetings in New Jersey with Magla, these contacts form a sufficient basis for general jurisdiction. Absent evidence establishing the frequency and the extent of these meetings, this Court cannot conclude that this meets the Third Circuit's standard of a very high threshold of business activity.

The Court finds no reason to revisit this issue.

Lastly, plaintiff claims that Big Time sells, markets and distributes products under the Quickie brand pursuant to an agreement with Quickie Manufacturing Corporation, which is located in Cinnaminson, New Jersey. While Magla only advised the Court at oral argument for the motion to dismiss that Quickie was located in New Jersey, a point reiterated in a post argument Affidavit, it was only in this motion that Magla furthers this argument by stating that Big Time "sells, markets and distributes" product pursuant to an agreement with Quickie. In the papers submitting in connection with the motion to dismiss, Magla maintained that the gloves from the Quickie product line were sold in Kings Supermarkets and Home Depot store throughout New Jersey. In an Affidavit submitted by Pierce, Big Time asserts that it does not ship gloves directly to retailers in New Jersey, but rather ships to out-of-state distribution centers, from which New Jersey retailers obtain the products. (Pierce Aff. ¶¶ 10, 11).[1] As state by the Court in the Opinion, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 112 (1987). Magla may not rely on Big Time's placing of products into the stream of commerce to establish general jurisdiction.

---

[1] The Affidavit of Pierce spoke directly to the distribution of product to King's Supermarkets and Walmart stores. Neither party provided specific information on the distribution of product to Home Depot stores located in New Jersey.

For the reasons set forth above, Magla's motion for reconsideration, pursuant to L. Civ. R. 7.1(i), of the portion of this Court's decision granting Big Time's motion to dismiss the Complaint for lack of personal jurisdiction, is denied.

December 8, 2006

_____
PETER G. SHERIDAN, U.S.D.J.